**John F. "Jack" WALSH, et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civ. A. No. 81–1998.**

United States District Court, District of Columbia.

July 31, 1985.

Beverly C. Moore, Jr., Law Offices of Beverly C. Moore, Jr., Washington, D.C., Landon Gerald Dowdey, Law Offices of Landon Gerald Dowdey, Washington, D.C., Wallace J. Smith and Ben Schiebel, Wallace J. Smith, Inc., Sacramento, Cal., Barry

Schwartz, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., William H. McDonald, David A. Childers, John E. Price, and Robert M.N. Palmer, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, Mo., for plaintiffs.

William T. Coleman, Jr., Richard C. Warmer, Carl R. Schenker, Jr., and John H. Beisner, O'Melveny & Myers, Washington, D.C., for defendant; Henry R. Nolte, Jr., James M. MacNee, Ford Motor Co., Dearborn, Mich., of counsel.

## OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on plaintiffs' Motion to Expand the Certified Classes to Include All Purchasers of the Subject 1976 and 1977 Model Year Vehicles Prior to August 21, 1977, Regardless of Whether They Experienced Park-to-Reverse Incidents Before or After November 2, 1977; defendant's Motion to Narrow Certified Classes with Respect to Statute of Limitations Issues; oppositions thereto; and the entire record herein. For the reasons set forth below, the Court grants plaintiffs' motion and denies defendant's motion.

*Plaintiffs' Motion to Expand Certified Classes*

Plaintiffs seek reconsideration of the Court's prior ruling on the statute of limitations question raised in Ford Motor Company's ("Ford") motion to dismiss the second amended complaint. In the March 14, 1984 memorandum opinion the Court determined that the claim of fraudulent concealment in this case would not toll the limitation period of four years. The Court reasoned that although the first two elements of fraudulent concealment, that of alleged deliberative concealment on the part of the defendant and plaintiffs' failure to discover the basis of the lawsuit, were satisfied, the remaining element, that of due diligence, was not. *Walsh v. Ford Motor Co.*, 588 F.Supp. 1513, 1521–23 (1984). The Court, therefore, concluded that all persons who purchased their vehicles prior to August 21, 1977 [1] and have alleged incidents or complained to Ford or its dealers on or after October 1977,[2] are barred by the statute of limitations to assert warranty claims. *Id.* at 1523.

Plaintiffs aver, and the Court agrees, that this conclusion on how the question of due diligence should be applied cannot be the law. Surely a person who purchased a Ford vehicle prior to August 21, 1977, and who did not experience an incident until long after the announcement of the National Highway Traffic and Safety Administration ("NHTSA") investigation, could hardly be accused of a lack of due diligence. As plaintiffs note, the non-incident owners who could not have known prior to October 1977 that they may have a claim, were under no duty prior to that date to investigate the possibility of pursuing a claim against Ford. Plaintiffs' Reply Memorandum at 4. Under the doctrine of fraudulent concealment "time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." *E.g.*, *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C.Cir. 1977). The limitation period must, therefore, be suspended until October 1977, the date alleged in the complaint in which plaintiffs could, through the exercise of due diligence, have discovered the basis of the lawsuit. Because plaintiffs filed this action on August 21, 1981, less than four

---

1. Because this action was filed on August 21, 1981, the relevant date for limitations purposes is August 21, 1977.

 Section 2–725 provides in pertinent part:
 § 2–725 Statute of Limitations in Contracts for Sale
 (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....
 (2) A cause of action accrued when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made....
 U.C.C. § 2–725.

2. The October 1977 date is taken from plaintiffs' second amended complaint. The complaint states that "[o]nly after the NHTSA Investigation commenced in October 1977 could consumers have reasonably suspected Ford's explanation to be erroneous." Plaintiffs' Second Amended Complaint at ¶ 33.

years from the date plaintiffs were effectively put on notice of a potential claim against Ford, the limitations period does not bar any plaintiffs from pursuing this action.

*Defendant's Motion to Narrow Certified Classes*

■ Ford avers that the Court must limit the certified classes by requiring that each plaintiff specifically claim that they were misrepresented in some way by Ford's action. Ford bases this argument on "what is actually stated in the Amended Complaint." Reply Memorandum of Ford Motor Company in Support of the Motion to Narrow Certified Classes with Respect to Statute of Limitations Issue at 2. In examining the Second Amended Complaint it is plain that the plaintiffs do not base their claim of fraudulent concealment solely on the individual acts of certain plaintiffs. The complaint states:

Ford actively concealed the defects and extraordinarily high frequency of park to reverse incidents in its FMX, C–3, C–4, and C–6 transmissions by systematically denying the existence of any tendency of such transmissions to jump from park to reverse and by asserting contrarywise that such transmissions always slipped into reverse only because of the vehicle operator's negligence. Purchasers and owners and passengers who incurred personal injuries in connection with vehicles sold prior to August 21, 1977 were thereby discouraged from investigating and seeking a remedy for such defective transmissions and could not through the exercise of due diligence have discovered Ford's potential liability.... Notwithstanding ... internal knowledge of a major problem, every time a consumer who had experienced a park to reverse problem complained to Ford, Ford responded that it was the consumer's fault, always concealing the large volume of such complaints it had received.

Plaintiffs' Second Amended Complaint ¶ 33.

In the March 14, 1984 memorandum opinion the Court noted:

In their complaint, plaintiffs not only allege that Ford actively concealed the existence of a transmission defect, but also told those who inquired about the problem that the alleged incidents were caused by driver error and negligence.

*Walsh v. Ford Motor Company*, 588 F.Supp. at 1522. It therefore concluded that

plaintiffs have adequately pleaded that Ford did actively and affirmatively misrepresent to certain plaintiffs that the transmission failure occurred, not because of possible design flaws, but because of driver error, despite knowledge of numerous complaints alleging exactly the same problem. Therefore, the Court finds that plaintiffs have adequately pleaded the first element necessary for proving fraudulent concealment, *i.e.*, wrongful concealment by Ford.

*Id.* at 1522–23. Based on the above, the Court again concludes that plaintiffs have alleged wrongful concealment, not simply for certain individual plaintiffs, but for the entire class.

Also in defendant's motion Ford notes that for purposes of establishing the date on which plaintiffs could have reasonably known that Ford's explanations may not have been true, the date is October 1977 and not November 2, 1977. It argues that if the Court should look beyond the complaint for determining when the limitations period shall begin to run, a date much earlier in time should be used. In opposition, plaintiffs aver that a date sometime after October 1977 should be the relevant point in time when plaintiffs could have learned of the alleged defect.

For purposes of the motion to dismiss, the Court used October 1977 as the date in which plaintiffs should have known of the alleged defect in the Ford vehicles. This date was taken from plaintiff's complaint which states, "only after the NHTSA investigation commenced in October 1977 could consumers have reasonably suspected Ford's explanations to be erroneous." Second Amended Complaint at ¶ 33. The Court at this stage does not intend to probe

the fraudulent concealment issue beyond what appears in the complaint.

An appropriate order is attached.

### ORDER

Upon consideration of plaintiffs' Motion to Expand Certified Classes to Include All Purchasers of the Subject 1976 and 1977 Model Year Ford Vehicles Prior to August 21, 1977 Regardless of Whether They Experienced Park-to-Reverse Incidents Before or After November 2, 1977, defendant's Motion to Narrow Certified Classes with Respect to Statute of Limitations Issues, oppositions thereto, the entire record herein, and for the reasons set forth in the accompanying opinion, it is by the Court this 31st day of July 1985,

ORDERED that plaintiffs' motion is granted; it is further

ORDERED that defendant's motion is denied; it is further

ORDERED that the Court's Memorandum Opinion of March 14, 1984, is amended, and that the parties dismissed on statute of limitations grounds are now permitted to bring their claims for breach of implied and written warranties; and it is further

ORDERED that the definition of the classes conditionally certified in this Court's order of May 9, 1985, be hereby modified to read as follows:

I. *Implied Warranty Incidents,* pursuant to Rule 23(b)(3):

All purchasers or owners (other than for purposes of resale) of 1976–1979 and 1980 pre-design change model year Ford vehicles equipped with an FMX, C–3, C–4, or C–6 automatic transmission seeking recovery of property damages incurred as a result of a Ford park-to-reverse incident, but excluding such persons who purchased such Ford vehicles in States which required the presence of vertical privity to pursue such claims.

II. *Written Warranty Incidents,* pursuant to Rule 23(b)(3):

All purchasers or owners (other than for purposes of resale) of 1976–1979 and 1980 pre-design change model year Ford vehicles equipped with an FMX, C–3, C–4, or C–6 automatic transmission seeking recovery of property damages incurred as a result of a Ford park-to-reverse incident occurring within the 12,000 mile/12 month written warranty period about which they complained to Ford or a Ford dealer within a reasonable time thereafter.

III. *All Owners Difference in Value Damages,* pursuant to Rule 23(b)(3):

All owners (other than for purposes of resale) of 1976–1979 and 1980 pre-design change model year Ford vehicles equipped with an FMX, C–3, C–4, or C–6 automatic transmission seeking recovery of damages equal to the difference in value between those transmissions as received and those transmissions as warranted.